## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Geoffrey Yandl, being duly sworn, depose and state that:

### Introduction

1. During my time as an ATF Agent, I have participated in investigations of unlawful firearms possession, use, and trafficking and, among other things, have conducted and participated in interviews and surveillance, the execution of search warrants, debriefings of informants, reviews of reports and firearm records, and have participated in investigations that included the use of informants and undercover investigators. Through my training, education, and experience, I have become familiar with the way illegal guns are possessed, transported, stored, and distributed, the methods of payment for such guns, the laundering of illegal proceeds, and the dialect, language, and coded dialect used by firearms possessors and traffickers. In connection with my duties, I investigate criminal violations of the Federal firearms laws including, but not limited to, possession of firearms by prohibited persons, in violation of 18 U.S.C. § 922(g).

2. I make this Continuation in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device (hereinafter the "**Subject Device**") and its contents, which is described as follows and in **Attachment A**: a black Samsung cell phone IMEI: 356408517746868, located in the possession of Demetrio FLORES III (a/k/a MOUSEY) upon his arrest on September 27, 2024.

3. The applied-for warrant would authorize the forensic examination of

1

the **Subject Device** for the purpose of identifying the electronically stored data particularly described in **Attachment B**.

4. Based on the below events, there is probable cause to believe that there will be evidence indicating FLORES knowingly and intentionally possessed a firearm, after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1), located on the **Subject Device**.

5. The facts in this Continuation come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents, and witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested search of the **Subject Device** and does not set forth all my knowledge about this matter.

**Probable Cause**

6. Demetrio FLORES III ("FLORES") is a 30-year-old male and a resident of Holland, Michigan. FLORES is on supervised release within the Western District of Michigan. He has state felony convictions for Carrying a Concealed Weapon, Felony Firearm, Assault with Intent to do Great Bodily Harm less than Murder, Malicious Destruction of Fire/Police Property, and Gang Membership from 2011, and a federal felony conviction of Felon in Possession of a Firearm from 2021.

7. On April 15, 2024, FLORES was identified as an absconder from Federal Supervised Release in the Western District of Michigan. A warrant for FLORES' arrest was issued by Chief U.S. District Judge Jarbou.

8. On September 27, 2024, the U.S. Marshals Fugitive Team located and identified

FLORES driving a maroon GMC Terrain SUV with Texas registration BVV9453 in Holland, Michigan. The registered owner of the vehicle is Jose Morales of Edinburg, Texas. Deputies conducted a traffic stop on the subject vehicle and arrested FLORES from the driver's seat without incident. FLORES has tattoos and was wearing clothing consistent with gang membership. The front seat passenger was identified as 19-year-old Angel Manuel Esquivel.

9. Deputies observed a pistol in plain view on the floor of the rear passenger seat. Deputies secured the pistol and found it to be a loaded Smith & Wesson .380 caliber pistol with an obliterated serial number.

10. Behind the rear passenger seats, in the cargo area, Deputies located a storage tote containing male clothing and documents belonging to FLORES, including photos of FLORES with friends and family and court records in FLORES' name. Also in the tote was a 9mm pistol and a multipage document identified as "MANIFESTO OF THE ALMIGHTY LATIN KING NATION". The 9mm pistol was unloaded and identified as a Ruger reported stolen to the Holland Police Department in 2023. Deputies collected two 9mm fired cartridge cases located outside the windshield resting on the driver's side wiper blade and a cell phone (**Subject Device**) found on the center console of the SUV.

11. The Smith & Wesson .380 caliber pistol was submitted to the Kalamazoo Department of Public Safety forensic lab for test fire and entry into the National Integrated Ballistic Information Network (NIBIN). The firearm functioned as designed and the test shots were correlated in NIBIN to a shooting investigation by the Wyoming Police Department. On July 30, 2024, Wyoming Police responded to a report of gunshots at 1133 Albers Street SW. Police collected one .380 caliber fired cartridge case (FCC) from the scene. The FFC was linked to the test shot from the Smith & Wesson pistol found in the vehicle driven by FLORES. The

shooting victims were mostly uncooperative with police but stated the shooting may be gang related. No suspects were identified. A thorough examination of the obliterated serial number determined it to be KJC7818. The Smith & Wesson .380 caliber pistol with serial number KJC7818 was reported stolen to the Kent County Sheriff's Office in 2023.

12. The Ruger 9mm caliber pistol was submitted to the Kalamazoo Department of Public Safety forensic lab for test fire and entry into NIBIN. The firearm functioned as designed and the test shots were correlated in NIBIN to another shooting investigation by the Wyoming Police Department. On September 19, 2024, (eight days before the firearm was recovered) Wyoming Police responded to a shooting at an occupied residence, 1151 Hudson Street SW. The victim's residence and vehicle were damaged by gunfire. Police recovered thirty-six (36) 9mm FCCs at the scene. The FCCs were linked to the test shots of the Ruger 9mm found in the tote with FLORES' belongings. Witnesses reported two unknown males dressed in all black had fled the scene of the shooting. The victims have been cooperative with police and are attempting to identify suspects. Additionally, the Ruger 9mm test shots were linked to the two 9mm FCCs found on the windshield of the SUV driven by FLORES.

13. Neither the Smith and Wesson nor the Ruger firearm was manufactured in Michigan.

14. Based upon my training, experience, and participation in firearm investigations, I am aware of the following:

    a. Illegal gun possessors and users often keep names and contact information of gun suppliers, purchasers, and others involved in illegal gun possession and use on their electronic devices.

    b. Illegal gun possessors and users often use electronic messaging or messaging apps, in addition to MMS, SMS text messages, social media, and voice call, to communicate with suppliers,

       purchasers, and others involved in illegal firearms on their electronic devices.

    c.    Illegal gun possessors and users often take pictures and videos of their illegal firearms, money, and associates which they store on their electronic devices or post onto social media via their electronic devices.

    d.    Global Position System (GPS) data on phones may show the location of an illegal gun user at a given time, which may provide corroborating evidence of illegal gun possession or instances of illegal gun use.

    e.    User attribution data and usernames, passwords, documents, and browsing history can provide evidence that the device is being used by an illegal gun possessor and can provide other useful evidence to the gun investigation.

    f.    Illegal gun possessors and users often use the internet to look up various information to support their illegal firearms activities.

## Technical Terms

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for

5

        determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.    IP Address: An internet protocol address (or simply "IP address")

      is a unique numeric address used by computers on the internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the internet must be assigned an IP address so that internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  16. Based on my training, knowledge, and experience, I know that the **Subject Device** has the capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**Electronic Storage and Forensic Analysis**

  17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

  18. *Forensic evidence.* As further described in **Attachment B**, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of

its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted

scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this Continuation supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in **Attachment A** to seek the items described in **Attachment B**.